**E-FILED on** __10/12/06__

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ISMART INTERNATIONAL LIMITED,<br><br>Plaintiff,<br><br>v.<br><br>I-DOCSECURE, LLC, a California Limited Liability Company; E-NETSECURE SERVICES, INC., a California Corporation; INTEGRITY DATA APPLICATIONS CONSULTING, LLC, a California Limited Liability Company; ISMART SECURE, LLC, a Delaware Limited Liability Company; JOSEPH BAGGIO, an individual; JONATHAN BALZORA, an individual,<br><br>Defendants. | No. C 04-03114 RMW<br><br>ORDER DENYING PLAINTIFF'S MOTION TO DISQUALIFY<br><br>**[Re Docket Nos. 221, 238, 246]** |

Plaintiff iSmart International, Ltd. ("iSmart") moves to disqualify attorneys from the law firm of Paul, Hastings, Janofsky & Walker LLP as counsel for defendants I-Docsecure LLC; E-Netsecure Services, Inc.; iSmart Secure LLC; and Joseph Baggio. After the hearing on this motion, the court instructed the parties to file supplemental declarations on certain subjects, which the parties have done. For the reasons set forth below, the court denies plaintiff's motion to disqualify.

ORDER DENYING PLAINTIFF'S MOTION TO DISQUALIFY—No. C 04-03114 RMW
JAH

## I. BACKGROUND

Plaintiff filed its initial complaint in July 2004, alleging failure of a joint enterprise between itself, I-DocSecure, LLC ("I-Doc"), E-NetSecure Services, Inc. ("E-Net"), and also naming as defendants Integrity Data Applications Consulting, LLC, Joseph Baggio, and Jonathan Balzora, and, eventually, iSmart Secure, LLC. The parties have changed counsel several times. On March 25, 2006, defendants I-Doc, E-Net, Secure, and Baggio ("defendants," for the purposes of this order) switched counsel from James Hughes and Robert Sullwold to Michael Edelman of Dechert LLP. Edelman left Dechert shortly thereafter and became associated with Paul, Hastings, Janofsky & Walker LLP on June 1, 2006. Edelman Decl. ¶ 2. The defendants elected to follow Edelman to Paul Hastings. *Id*.

In early 2006, a group of Paul Hastings attorneys led by David Blumenfeld represented "Zoom Developers Pte Ltd." in connection with the acquisition of real estate in Shanghai, China. Blumenfeld Decl. ¶ 2. Prakash Kirpalani was Blumenfeld's primary contact at Zoom Developers. *See id*. ¶¶ 3, 4, 11. The scope of this representation is purportedly contained in an engagement letter which has not been provided to the court. *See* Blumenfeld Supp. Decl. ¶ 2; *see also* Edelman Supp. Decl. ¶ 9. According to R. K. Bhuta, "the Vice President of Project Finance for Zoom Developers Pvt Ltd India," attorneys of Paul Hastings "represent the Zoom Group of Companies in an ongoing business transaction." Bhuta Decl. ¶¶ 1, 3. Bhuta's last meeting with Blumenfeld was in mid-May, 2006. Bhuta Supp. Decl. ¶ 8; Blumenfeld Supp. Decl. ¶ 4. Blumenfeld's understanding is that the purpose of this meeting was to introduce Paul Hastings attorneys to officials of a "third-party financial institution" so that the institution could possibly retain Paul Hastings attorneys to represent it in connection with Zoom Developer's Shanghai real estate acquisition. Blumenfeld Supp. Decl. ¶ 4.

Blumenfeld states that Paul Hastings has billed Zoom no time since the middle of March 2006, though Blumenfeld has subsequently attended meetings related to the representation "as a business development activity." Blumenfeld Decl. ¶ 6. He also asserts that Paul Hastings attorneys "completed all work described in the engagement letter in March, 2006," Blumenfeld Supp. Decl. ¶ 3, and that he has "instructed our accounting department to return to the client the

small balance on account" left over from Zoom's retainer. Blumenfeld Decl. ¶ 4. (When Blumenfeld instructed the accounting department to do this is not indicated.) Blumenfeld also states that Zoom Developers has not requested that Paul Hastings attorneys perform further work and that no such work has been performed. Blumenfeld Supp. Decl. ¶ 3. Bhuta states that he intends to use Paul Hastings attorneys over the next several years if the Chinese government approves the Shanghai project. Bhuta Supp. Decl. ¶ 8.

The parties dispute the degree of relatedness (and even the precise relationship) between iSmart and Zoom. iSmart is an Indian business entity. Its website describes it as "a group company of Zoom Enterprises." Coddon Decl., Ex. B; *see also* Edelman Decl., Ex. C at 1. The website lists "Y.P. Sahni," "D.N. Bakhai," and "Vijay Choudhary" as iSmart's board, and "Pradeep Saxena" and "Sujit Poddar" as advisors. *Id*. Zoom Developers is likewise an Indian business entity. Edelman Decl., Ex. C at 3. The "Management" section of Zoom Developers' website[1] lists the board of directors of a Zoom entity[2] as "Vijay Choudhary," "B.L. Kejriwal," "D. N. Bakhai," "Yashpal Sahni," and "Pradeep Saxena." According to Bhuta, there is overlap between the ownership of Zoom Developers and iSmart: "61% of the shares of iSmart are held by the same shareholders who are holding 99.99% of Zoom" Developers.[3] Bhuta Suppl. Decl. ¶ 2.

Zoom Developers' website lists both Zoom Developers and iSmart as "Group Companies of Zoom Enterprises." Edelman Decl., Ex. C at 1. According to Bhuta, "'Zoom Enterprises' and the 'Zoom Group of Companies' are fictitious names that refer to a group of companies hwo share

---

[1] http://www.zoomdevelopers.com/management.htm (last visited September 25, 2006).

[2] According to Edelman, even though the domain of this site is zoomdevelopers.com, the management section lists the officers of Zoom Enterprises. Edelman Supp. Decl. ¶ 6, Ex. F. However, Bhuta describes Zoom Enterprises as a "fictitious name." Bhuta Suppl. Decl. ¶ 3. For the purposes of this motion, the court takes the list to be the board of Zoom Developers.

[3] For the purposes of this motion, the court will assume this statement to be true, as it is more recent and more detailed that other conflicting assertions. For example, iSmart has claimed that it is a wholly-owned subsidiary of Zoom Developers. *See*, *e.g.*, Kouri Decl., Ex. B. at 1. In counterclaims filed on February 25, 2006, the defendants alleged that Vijay "Choudhary is, and at all relevant times herein was, the owner and controlling executive of various business interests, including being the Director of Zoom Developers PVT Ltd., the parent company of the wholly owned subsidiary, iSmart International." Countercl. (docket no. 81) ¶ 7. In answering the counterlcaim, iSmart admitted "Choudhary is the owner and executive officer of various business interests, and is a director of Zoom Developers Pvt. Ltd." but denied that iSmart "is a wholly owned subsidiary of Zoom Developers Pvt. Ltd." Answer to Countercl. (docket no. 85) ¶ 7.

the same or virtually the same ownership, corporate governance and operational management." Bhuta Suppl. Decl. ¶ 3. This grouping includes iSmart and Zoom Developers. *Id*. Zoom Developers and iSmart are supported by common "secretarial, legal and financial consultancy" services. Bhuta Supp. Decl. ¶ 6. Projects initiated in one company of Zoom Enterprises may be transferred to another as the project develops. *Id*. ¶ 8. The Shanghai real estate matter in which Blumenfeld represented Zoom Developers may at a later date be transferred to another company of Zoom Enterprises, including iSmart. *Id*. ¶ 9.

The defendants have requested iSmart produce documents relating to Zoom Developer's "profits after tax of $7.08 million," "gross income of $37.27 million," and "net worth of $36.90 million." Edelman Decl., Ex. D at 11-13. In its responses to these requests for production, iSmart claims that it does not control Zoom Developers and generally does not have the documents that would be responsive to the defendants' requests. *Id*. at 12-13.

There is no evidence that Paul Hastings attorneys have acquired from Zoom any particular confidential information relevant to the action before this court, though iSmart claims that they did. *Compare* Blumenfeld Decl. ¶¶ 9-10 *with* Bhuta Decl. ¶ 4. Research performed by attorneys in Paul Hastings' conflicts department did not reveal any relationship between iSmart and Zoom Developers. Coddon Decl. ¶ 3.

## II. ANALYSIS

This court uses California state law to resolve questions regarding the permissibility of representation. *Elan Transdermal Ltd. v. Cygnus Therapeutic Sys.*, 809 F. Supp. 1383, 1387 (N.D. Cal. 1992) (Orrick, J.). If material facts are in dispute, disqualification is at the discretion of the trial court. *Cal West Nurseries v. Superior Court*, 129 Cal. App. 4th 1170, 1174 (2005). Otherwise, the issue is purely one of law. *See City of San Francisco v. Cobra Solutions*, 38 Cal. 4th 839, 845 (June 5, 2006). The California Supreme Court has explained that when deciding whether to disqualify an attorney, "[t]he paramount concern must be to preserve public trust in the scrupulous administration of justice and the integrity of the bar." *Id*. "When disqualification is sought because of an attorney's successive representation of clients with adverse interests, the trial court must balance the current client's right to the counsel of its choosing against the former

ORDER DENYING PLAINTIFF'S MOTION TO DISQUALIFY—No. C 04-03114 RMW
JAH                                       4

1  client's right to ensure that its confidential information will not be divulged or used by its former
2  counsel." *Id.*
3      "Two types of situations give rise to conflicts disqualifying counsel: concurrent
4  representation and successive representation. The rules governing such conflicts differ." *Cal*
5  *West*, 129 Cal. App. 4th at 1174. Conflicting, concurrent representation is generally forbidden;
6  this result is compelled by an attorney's duty of loyalty. *Id.* at 1175. Whether successive
7  representation for and then against an entity is permissible depends on "(1) the relationship
8  between the legal problem involved in the former representation and the legal problem involved in
9  the current representation, and (2) the relationship between the attorney and the former client with
10  respect to the legal problem involved in the former representation." *Id.* at 1174. As the California
11  Supreme Court recently explained,

> To determine whether there is a substantial relationship between successive representations, a court must first determine whether the attorney had a direct professional relationship with the former client in which the attorney personally provided legal advice and services on a legal issue that is closely related to the legal issue in the present representation. If the former representation involved such a direct relationship with the client, the former client need not prove that the attorney possesses actual confidential information. Instead, the attorney is presumed to possess confidential information if the subject of the prior representation put the attorney in a position in which confidences material to the current representation would normally have been imparted to counsel. When the attorney's contact with the prior client was not direct, then the court examines both the attorney's relationship to the prior client and the relationship between the prior and the present representation. If the subjects of the prior representation are such as to make it likely the attorney acquired confidential information that is relevant and material to the present representation, then the two representations are substantially related.

20  *Cobra Solutions*, 38 Cal. 4th at 847 (citations and quotation marks omitted). Successive
21  representation is governed by the "duty of confidentiality." *Cal West*, 129 Cal. App. 4th at 1174.
22      The State Bar of California has opined that an attorney may simultaneously represent "a
23  large, publicly-held corporation" and act adversely to its wholly-owned subsidiary where there is
24  no chance the corporate parent will be involved in the action against the subsidiary. Formal
25  Opinion No. 1989-113, *available at* 1989 WL 253261 at *1. The State Bar noted that "[w]hen a
26  corporation is the alter ego of another entity or has a sufficient unity of interests, they should be
27  treated as the same entity for conflict purposes." *Id*. at *5. Considerations relevant to this inquiry
28  are "the separateness of the entities involved, whether corporate formalities are observed, the

ORDER DENYING PLAINTIFF'S MOTION TO DISQUALIFY—No. C 04-03114 RMW
JAH    5

extent to which each entity has distinct and independent managements and board[s] of directors, and whether, for legal purposes, one entity could be considered the alter ego of the other," as well as "the percentage of ownership of stock" and whether the entities are "closely-held or family corporation[s]." *Id.* at *5 and n.2.[4]

The California Court of Appeal, in *Morrison Knudsen Corp. v. Hancock, Rothert & Bunshoft*, discussed three factors to consider when determining whether related corporate entities should be considered as a single unit for the purposes of representational conflicts: (1) whether the attorney received "confidential information" from one entity "substantially related to the present claim against" the other; (2) whether control of the two entities' legal affairs overlap; (3) whether the two entities have overlaps in other areas, such as operations, personnel, or insurance coverage. 69 Cal. App. 4th 223, 245-48 (1999). The court considered the first factor the most important. *Id.* at 245. As part of the third factor, the court considered the likelihood that the two clients would become adverse during the litigation. *Id.* at 247. The court expressly rejected the holding from *Brooklyn Navy Yard Cogeneration Partners v. Superior Court*, 60 Cal. App. 4th 248 (1997), that only the alter ego test could be used to determine whether clients were the same for conflicts analysis. *Morrison Knudsen*, 69 Cal. App. 4th at 249-52; *see also Certain Underwriters at Lloyd's London v. Argonaut Ins. Co.*, 264 F. Supp. 2d 914, 921 n.3 (N.D. Cal. 2003) (Chen, M.J.). The *Morrison Knudsen* court summarized that "the principal focus should be the practical consequences of the attorney's relationship with the corporate family. If that relationship may give the attorney a significant practical advantage in a case against an affiliate, then the attorney can be disqualified from taking the case." 69 Cal. App. 4th at 253.

First, the court must resolve whether iSmart and Zoom Developers are to be treated as separate entities for conflicts purposes. The first factor from *Morrison Knudsen* does not appear to be present here. iSmart has presented no evidence that Blumefeld's representation of Zoom Developers gave any Paul Hastings attorney access to any confidential information that would be material in this action. There is also no evidence of the second factor. The evidence merely

---

[4] The State Bar opinion is "advisory only" and "not binding on the courts." 1989 WL 253261 at *6. California courts, though, have relied on it for guidance. *See, e.g.*, *Morrison Knudsen Corp. v. Hancock, Rothert & Bunshoft*, 69 Cal. App. 4th 223, 240-44 (1999).

ORDER DENYING PLAINTIFF'S MOTION TO DISQUALIFY—No. C 04-03114 RMW
JAH                                                                6

suggests that Bhuta handles legal affairs for Zoom Developers; his counterpart, if any, at iSmart is undisclosed. The third factor weighs heavily in iSmart's favor, though. The evidence indicates the five principals each for Zoom Developers and iSmart are the same in four instances (Bakhai, Choudhary, Saxena, and Sahni) and that there is overlap of lower-level employees.

This does not appear to be the situation contemplated by the State Bar opinion. iSmart and Zoom Developers do not appear to be publicly-traded; rather, they appear to be closely held. There is substantial overlap between the boards of directors of the two (Choudhary, Bakhai, and Sahni). iSmart is not owned by Zoom Developers; rather, there is substantial overlap between the two groups of undisclosed owners of each company. Since it is a close call, the court will look to the guidance in *Morrison Knudsen* to consider any "significant practical advantage" the potentially conflicting representation may give the attorney facing disqualification. The facts before the court do not indicate that Edelman and his associates would gain any practical advantage in this litigation involving a joint enterprise gone wrong if they knew information Zoom Developers disclosed to Blumenfeld and his associates in the course of acquiring real estate in Shangai. The court will therefore consider iSmart and Zoom Developers separate entities for the purpose of this motion to disqualify.[5] Accordingly, there are no grounds for disqualifying any Paul Hastings attorney.

### III. ORDER

For the foregoing reasons, the court denies plaintiff's motion to disqualify any Paul Hastings attorney from representing defendants I-Doc, E-Net, Secure, and Baggio.

DATED:     10/12/06            *Ronald M Whyte*
                               RONALD M. WHYTE
                               United States District Judge

---

[5] This court does not intend the findings in this order to apply outside of the ruling on the motion to disqualify.

**Notice of this document has been electronically sent to:**

**Counsel for Plaintiff:**

Joseph Kouri joseph.kouri@sdma.com
Marc A. Koonin marc.koonin@sdma.com

**Counsel for Defendants:**

Michael N. Edelman michaeledelman@paulhastings.com
James Hughes jah@greenstamps.com

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:**   10/12/06            /s/ JH
                         **Chambers of Judge Whyte**